# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### EASTERN (WATERLOO) DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | | |
| Plaintiff, | | No. 18-cr-2033-CJW-MAR |
| vs. | | **ORDER** |
| JASON TROY HARRIMAN, | | |
| Defendant. | | |

_____

This matter is before the Court on Jason Troy Harriman's ("defendant") motion in limine (Doc. 48) and on defendant's Motion to Take Trial Testimony Via Videoconferencing (Doc. 50). The government timely resisted both motions. (Docs. 53, 54). For the following reasons, defendant's motion in limine (Doc. 48) is **denied in part and held in abeyance in part**, and defendant's motion to take testimony via videoconferencing (Doc. 50) is **granted**.

Defendant was indicted on two counts of murder for hire, one of which charged defendant with hiring an undercover law enforcement officer ("UC") to murder defendant's ex-wife—D.H.—and one of which charged defendant with hiring that same UC to murder D.H.'s boyfriend—A.W. (Doc. 2). The indictment further states that defendant took steps to hire the UC while defendant was incarcerated in Forest City Federal Correctional Institution ("Forest City"). (*Id.*, at 1). Defendant now seeks to exclude evidence of his prior convictions and of prior violent actions taken by defendant against D.H. (Doc. 48). Defendant also seeks leave of Court to permit a material witness to provide trial testimony via videoconference, instead of appearing personally. The Court will consider each motion in turn.

# *I.    MOTION IN LIMINE*

Defendant's motion in limine seeks to exclude four categories of evidence under Federal Rules of Evidence 403 and 404(b):

1) Evidence, including underlying facts, of defendant's January 6, 1997 convictions for burglary in the second degree and kidnapping in the third degree;

2) Evidence, including underlying facts, of defendant's April 18, 2006 conviction for assault;

3) Evidence, including underlying facts, of defendant's April 21, 2007 conviction for domestic abuse assault; and

4) Evidence that defendant attempted to murder his ex-wife, D.H., on September 27, 2009.

The government asserts that it does not intend, at this time, to introduce evidence of defendant's April 18, 2006 conviction for assault.  (Doc. 53, at 1).  As such, the Court holds defendant's motion in limine in abeyance to the extent defendant seeks to exclude evidence regarding the 2006 assault conviction.  Should the government later wish to introduce evidence of the 2006 assault conviction, or the underlying facts, the government must alert the Court and defense counsel first; defendant may then renew his motion at that time.  The Court will address each of the remaining three categories of evidence in turn.

Federal Rule of Evidence 403, in relevant part, permits the Court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice . . .."  Rule 404(b) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  FED. R. EVID. 404(b)(1).  Such evidence may, however, be admissible to prove motive, opportunity, intent,

preparation, plan, knowledge, identity, absence of mistake, or lack of accident. FED. R. EVID. 404(b)(2). For Rule 404(b) evidence to be admissible, "[t]he evidence must be 1) relevant to a material issue; 2) similar in kind and not overly remote in time to the crime charged; 3) supported by sufficient evidence; and 4) higher in probative value than prejudicial effect." *United States v. Williams*, 534 F.3d 980, 984 (8th Cir. 2008) (citation and internal quotation marks omitted).

As to the first category of evidence, defendant's 1997 convictions for burglary of D.H.'s residence and kidnapping D.H., defendant argues only that the convictions are too remote in time to be admissible, and that evidence of the convictions would be more prejudicial than probative. The 1997 convictions occurred approximately twenty-one years prior to the conduct giving rise to the instant charges. (*See* Doc. 53, at 5). The government asserts that these convictions are not overly remote in time because the 1997 convictions represent the first acts "in a long and continuing string of violence and threats directed by defendant toward[ ] D.H." (*Id.*). In determining whether a prior conviction is too remote in time to be admissible, the Court imposes a reasonableness standard, evaluating the facts and circumstances of each case. *United States v. Walker*, 470 F.3d 1271, 1275 (8th Cir. 2006). "Whether the conviction is close in time to the charged offense is one factor indicating the relevancy of the evidence, but there is no specific number of years beyond which prior bad acts are no longer relevant to the issue of intent." *Id.* (citation and internal quotation marks omitted).

The Court finds that the 1997 convictions are not so remote in time as to mandate their exclusion from evidence. The 1997 convictions, stemming from violent acts directed at D.H., are relevant to defendant's intent to harm D.H., which, in turn, is relevant to defendant's intent to hire an individual to kill D.H. Further, because defendant allegedly committed a number of violent acts against D.H. between the 1997 conviction and the conduct charged in the instant indictment, the Court finds that

defendant's intent in committing the 1997 crimes was not necessarily rendered stale in the interim. That is, defendant's repeated course of violent conduct against D.H. shows that defendant's alleged intent to harm D.H. likely continued, if it ever existed, from 1997 through May 2018, instead of manifesting on two separate occasions over a period of twenty-one years. The Court therefore rejects defendant's argument that evidence of the 1997 convictions should be excluded for being too remote in time.

With respect to defendant's request to exclude evidence of defendant's alleged attempt to murder and kidnap D.H. in 2009, the Court finds introduction of the underlying conduct giving rise to the 2009 charges proper. The Court understands the government's position to be that the government will not seek to introduce evidence of the charges against defendant—of which defendant was ultimately acquitted—nor will the government seek to elicit testimony as to whether D.H. believed defendant intended to murder D.H. (Doc. 53, at 5). The government asserts that it intends only to elicit testimony from D.H. as to "what happened revolving around defendant breaking into her home and holding her 'hostage' while holding a knife to her throat and resulting in her throat being cut." (*Id.*). Because the government only intends to introduce evidence concerning the underlying conduct and not the subsequent charges or court proceedings, the government need only prove "that the act occurred and that the defendant was the actor." *Huddleston v. United States*, 485 U.S. 681, 689 (1988) (citation omitted). If defendant believes D.H.'s testimony insufficient to meet this standard, defendant may renew his objection at the appropriate time during trial.

Alternatively, defendant requests "that the Court require an offer of proof from the [g]overnment before permitting [D.H.] to testify to the alleged attempted murder." (Doc. 48-1, at 5). The Court understands defendant's request as seeking an offer of proof only as to the conclusion that defendant attempted to murder D.H. The Court does not understand defendant's alternative request to pertain to the underlying facts. Because the

government does not intend to elicit testimony from D.H. as to whether she thought defendant was attempting to murder her, the Court finds such an offer of proof unnecessary.

Finally, although the prior convictions[1] and violent actions directed toward D.H. would be somewhat prejudicial to defendant, the danger of unfair prejudice would not substantially outweigh the evidence's probative value. *See United States v. Cook*, 454 F.3d 938, 941 (8th Cir. 2006) ("Though all Rule 404(b) evidence is inherently prejudicial, the test under Rule 403 is whether its probative value is *substantially* outweighed by the danger of *unfair* prejudice." (emphasis in original) (citation omitted)). Each category of evidence that is the subject of defendant's motion in limine, not including the 2006 assault conviction, directly stems from violent actions defendant took against D.H., and each is relevant to establishing the element of intent—that is, intent to hire an individual to murder D.H. In light of the value the challenged evidence will have in establishing a crucial element of one of the charged offenses, the Court finds that the danger of unfair prejudice does not substantially outweigh the evidence's probative value. The Court is also persuaded that the challenged evidence is relevant to defendant's plan, knowledge, and absence of mistake or accident, to the extent the evidence shows defendant had a purposeful plan to harm D.H., and that the evidence may be relevant to defendant's motive.

Further, if, as the government expects, the jury hears telephone calls between D.H. and defendant, in which defendant "threatens to kill [D.H.], assault [D.H.], and uses derogatory language toward[ ] [D.H.]," the Court is doubtful that the subject

---

[1] The Court notes that defendant's 2007 domestic abuse assault conviction is discussed only in connection with the Court's discussion on prejudice. This is because defendant has challenged evidence of the 2007 conviction only on the basis that such evidence would be unduly prejudicial. (Doc. 48-1, at 4). Defendant advances no other arguments regarding the 2007 conviction, and the Court, therefore, finds it unnecessary to discuss the 2007 conviction separately.

evidence will be measurably more prejudicial, if at all, than the aforementioned phone calls. (Doc. 53, at 6). As such, permitting the subject evidence to be admitted will not serve to unfairly prejudice defendant.

Defendant's motion in limine (Doc. 48) is **held in abeyance** as to defendant's 2006 assault conviction, and is **denied** as to defendant's 1997 convictions for burglary and kidnapping, as to defendant's 2007 conviction for domestic abuse assault, and as to evidence that defendant attempted to murder D.H. on September 27, 2009.

## II.    VIDEOCONFERENCING

During the course of defense counsel's investigation, counsel interviewed an inmate, also housed at Forest City, who provided counsel with information that would be favorable to defendant at trial, if defendant could introduce the information at trial. (Doc. 50-1, at 1). The witness, however, ultimately informed counsel that the witness was unwilling to testify while physically present in Court out of fear of retaliation, and that if the witness was brought to Court anyway, the witness's testimony would not favor defendant. (*Id.*). Based on the witness's representations, defendant argues that the witness is "unavailable due to threat of retaliation within prison," and that the Court should permit the witness to testify via videoconference to provide the witness with some degree of protection. (*Id.*, at 2).

The government's resistance to defendant's motion is based, largely, on the notion that testimony offered in a "virtual" form—that is, via videoconference or closed-circuit television—does not carry the same indicia of reliability as does live testimony. (Doc. 54, at 2). The government further argues that the government's ability to cross examine a witness who is testifying by video would be "blunted," and that the Court should therefore deny defendant's motion. (*Id.*). The Court recognizes, as the government asserts, that there is a preference for live testimony. The Court also recognizes that courts have held, in certain circumstances, that permitting a witness to testify against a

defendant without the witness personally appearing in court constitutes a violation of the Confrontation Clause. *See, e.g.*, *United States v. Yates*, 438 F.3d 1307, 1319 (11th Cir. 2006). (*See also* Doc. 54, at 2-3 (basing resistance on caselaw surrounding Confrontation Clause)).

The circumstances in the instant case, however, do not invoke the Confrontation Clause. Rather, defendant's right to present testimony by the subject witness invokes defendant's substantive right to have "a meaningful opportunity to present a complete defense." *Crane v. Kentucky*, 476 U.S. 683, 690 (1986). "The right to offer the testimony of witnesses . . . is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so [the jury] may decide where the truth lies." *Washington v. Texas*, 388 U.S. 14, 19 (1967). "Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law." *Id.*

Each of the cases the government has cited in support of its resistance addresses only whether a defendant's Confrontation Clause rights are violated where the government does not physically produce a witness who testifies against the defendant, thus precluding the defendant from facing his accuser in court. *See Maryland v. Craig*, 497 U.S. 836, 840 (1990) (stating the issue as being "whether the Confrontation Clause of the Sixth Amendment categorically prohibits a child witness . . . from testifying against a defendant at trial, outside the defendant's physical presence, by one-way closed circuit television"); *Yates*, 438 F.3d at 1319 (holding that "the presentation of live, two-way video conference testimony on a television monitor violated Defendants' Sixth Amendment confrontation rights"); *United States v. Baker*, 45 F.3d 837, 844-45 (4th Cir. 1995) (considering whether, in the context of a civil commitment proceeding, a defendant's right to confront the witnesses against him was violated by use of

videoconferencing, and analogizing defendant's civil due process rights to those of a criminal defendant under the Confrontation Clause). The government has not cited to any legal authority that forbids a *defense* witness from testifying via videoconference.

The Court finds that defendant's right to present a meaningful and complete defense would be curtailed if the subject witness were to be compelled to personally appear. The witness has stated on three separate occasions, seemingly without provocation by defendant or defense counsel, that the witness would offer a different narrative if testifying in Court than the witness would offer if permitted to testify via videoconference, and that the narrative that would be elicited by the witness's in-person testimony would disfavor defendant. In light of these concerns, the Court is persuaded that if the witness were compelled to testify in person, defendant would not be able to offer the version of the facts that defendant would be able to offer by the witness being permitted to testify via videoconference. Precluding defendant from presenting "[his] version of the facts" would amount to a violation of defendant's fundamental constitutional rights. *Washington*, 388 U.S. at 19. The Court therefore holds that the subject witness, as identified in defendant's motion (Doc. 50-1), may offer trial testimony via videoconference.

Although the government has raised valid concerns about the jury being unable to personally observe the witness in Court during the witness's testimony and therefore being unable to accurately judge the veracity of the witness's testimony, the Court finds that the government may resolve these concerns through vigorous cross examination. Specifically, the government will have the ability to question the witness as to why the witness is appearing via videoconference instead of in person and about the witness's assertion that he would offer a different narrative during in-person testimony than the witness will, presumably, offer when testifying via videoconference. If the witness denies making the statements about testifying unfavorably to defendant if called to testify

live at trial, the Court will allow the government to present collateral evidence that the witness made such a statement and will allow the jury to consider the collateral evidence as substantive evidence, not only as impeachment evidence. It will then be up to the jury to determine whether it believes the witness's video testimony or that the truth would be unfavorable to defendant, and the weight the jury believes the testimony deserves.

The Court sees the potential for future witnesses to take advantage of the instant ruling and attempt to mimic the instant witness's actions so that they may, likewise, avoiding having to make a personal appearance in court. The Court is wary of this possibility and will remain cognizant of the potential for abuse of the judicial process. Moreover, the circumstances in this case are sufficiently unique that the Court is doubtful that these circumstances will arise with great frequency.[2]

### III.    CONCLUSION

For the aforementioned reasons, defendant's motion in limine (Doc. 48) is **denied in part and held in abeyance in part**, and defendant's motion to take testimony via videoconference (Doc. 50) is **granted**.

**IT IS SO ORDERED** this 16th day of January, 2019.

C.J. Williams
United States District Judge
Northern District of Iowa

---

[2] The "unique" circumstances to which the Court refers include the witness's repeated statement, over a period of one week, that he would not testify favorably if compelled to appear personally, the witness affirmatively reaching out to defense counsel to inform counsel as such, the perceived import of the witness's testimony, and the nature of the witness's testimony being in favor of defendant, as opposed to being in favor of the prosecution. (*See* Doc. 50-1, at 1-2).