# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | No. 18-CR-2033-CJW-MAR |
| vs. | **ORDER** |
| JASON TROY HARRIMAN, | |
| Defendant. | |

## I.    INTRODUCTION

On January 29, 2019, a jury found defendant guilty of two counts of murder for hire, in violation of Title 18, United States Code, Section 1958 (Doc. 90), rejecting defendant's claim that a federal agent entrapped him into hiring the agent to kill defendant's ex-wife, D.H., and her new boyfriend, A.W.  Defendant was represented by counsel during the trial.  The Court denied defendant's motions for judgment of acquittal made at the close of the government's case and renewed at the close of all of the evidence.  (Doc. 86).  On February 12, 2019, defendant (still represented by counsel) filed a timely Motion for Judgment of Acquittal and New Trial.  (Doc. 95). On March 13, 2019, the Court denied defendant's Motion for Judgment of Acquittal and New Trial.  (Doc. 101).

On March 25, 2019, defendant filed a motion to proceed pro se.  (Doc. 102).[1] On April 4, 2019, the Court granted defendant's motion to proceed pro se.  (Doc. 106). On July 3, 2019, defendant filed a pro se motion for a new trial asserting a *Brady* violation.  (Doc. 133).  On July 10, 2019, defendant filed a pro se supplement to his

---

[1] In addition to requesting permission to proceed pro se, defendant's March 25, 2019 motion also included a motion for new trial which the Court denied on April 5, 2019.  (Doc. 107).

motion for a new trial and a second pro se motion for a new trial, this one based on alleged ineffective assistance of counsel. (Docs. 134 & 135). (Doc. 135). On July 11, 2019, the government filed a timely resistance to defendant's first pro se motion for new trial. (Doc. 136). For the reasons that follow, the Court **denies** defendant's motions for a new trial.

## II.     ANALYSIS

### A.     *The Legal Standard*

Federal Rule of Criminal Procedure 33 governs defendant's motions for a new trial. Rule 33(a) provides: "Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." FED. R. CRIM. P. 33(a). A court has broad discretion in considering a motion for new trial. *See United States v. Garcia*, 569 F.3d 885, 889 (8th Cir. 2009); *United States v. Peters*, 462 F.3d 953, 957 (8th Cir. 2006). A court may "weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict." *United States v. Campos*, 306 F.3d 577, 579 (8th Cir. 2002) (quoting *White v. Pence*, 961 F.2d 776, 780 (8th Cir. 1992)); *see also United States v. Starr*, 533 F.3d 985, 999 (8th Cir. 2008). Nevertheless, district courts "must exercise the Rule 33 authority 'sparingly and with caution.'" *Campos*, 306 F.3d at 579 (quoting *United States v. Lincoln*, 630 F.2d 1313, 1319 (8th Cir. 1980)).

### B.     *Timing of Motion*

The government argues that the Court should deny defendant's motions because they are untimely. (Doc. 136, at 5).[2] Motions for new trial "must be filed within 14

---

[2] The government's resistance addresses defendant's first pro se motion for new trial and its supplement. (*See* Doc. 136). The government's resistance does not directly address defendant's second pro se motion for new trial, but defendant filed it eight days after his first pro se motion for new trial. (S*ee* Doc. 135). Thus, the government's timeliness arguments are equally applicable to defendant's second pro se motion for new trial.

days after the verdict or finding of guilty." FED. R. CRIM. P. 33(b)(2).[3] The fourteen-day filing deadline runs from the time of the jury verdict, not the entry of judgment. FED. R. CRIM. P. 33 advisory committee's note to 1998 amendments ("It is the intent of the Committee to remove th[e] element of inconsistency [in the running of the deadline] by using the trial court's verdict or finding of guilty as the triggering event."). A court may extend the deadline "if the movant failed to act because of excusable neglect." *United States v. Boesen*, 599 F.3d 874, 879 (8th Cir. 2010) (citing FED. R. CRIM. P. 45(b)(1)(B)). The decision whether to grant an extension is within a court's discretion. *See United States v. Owen*, 559 F.3d 82, 84 (2d Cir. 2009) ("We conclude that, under these circumstances, where the Rule 33 motion is still pending before the District Court, the District Court is in the best position to decide, in the exercise of its informed discretion, whether [defendant's] pro se motion was timely under Rule 33 and Rule 45(b).").

Here, the jury found defendant guilty on January 29, 2019. To be timely, defendant needed to file a motion for a new trial by February 12, 2019. Defendant filed his first pro se motion for a new trial on July 3, 2019, which is more than five months after the deadline passed. Defendant filed his second pro se motion for a new trial a week later. Thus, defendant's motions were untimely. *See United States v. Foster*, 623 F.3d 605, 608 (8th Cir. 2010) (holding defendant's motion for new trial untimely when defendant filed motion six months after verdict).

The Court does not find excusable neglect justifying extending the deadline. Although defendant claims his appointed attorney was ineffective in failing to pursue the *Brady* issue raised in the first pro se motion for a new trial, the record is undeveloped.

---

[3] There is an exception to this deadline in the event of "newly discovered evidence." FED. R. CRIM. P. 33(b)(1). Defendant is not alleging newly discovered evidence. Rather, he is claiming that the alleged missing communications were apparent from the government's discovery file to which his attorney had full access. (Doc. 135).

Thus, the Court cannot make any finding at this time regarding defendant's ineffective assistance of counsel claim. If there is any merit to that claim, defendant may seek relief in a post-conviction petition when there will be an opportunity to develop the record. Regardless, even after defendant began to represent himself, he did not act diligently in filing his motions for a new trial. The government provided discovery to defendant in his pro se capacity on May 15, 2019, including copies of all recorded calls in the government's possession. (Docs. 120; 136, at 2). On June 11, 2019, the government informed defendant that he had been provided all of the recorded phone calls in its possession. (Doc. 136, at 2-3). Nevertheless, defendant did not file the instant motion for a new trial until July 3, 2019, three weeks after he became aware of the allegedly missing recordings. Defendant filed his second pro se motion for a new trial a month after becoming aware of the allegedly missing recordings.

Thus, the Court denies defendant's motions for a new trial as untimely. Nevertheless, the Court will address defendant's motions on their merits as well, finding that denial would be appropriate even if the motions were timely.

### C. *Brady* Violation Claim

In his first pro se motion for a new trial, defendant argues that he is entitled to a new trial because the government committed a *Brady* violation when it failed to obtain "numerous telephone recordings" and emails from the Bureau of Prisons. (Doc. 134, at 1). Defendant asserts that the missing phone calls occurred in January 2018. Defendant claims that in January he made a number of phone calls to his ex-wife from prison, recordings of which were not included in his discovery file. Defendant also asserts recordings of certain phone calls with Bill Baker and Ira Sojka and copies of email with Ira Sojka were missing from the discovery file. Defendant relates, based on his memory apparently, the alleged contents of these alleged missing phone calls and asserts that the conversations contained exculpatory evidence. Defendant also claims there were

emails exchanged between the undercover officer and defendant that were not included in the discovery file.

The government responds that it obtained the recordings in its discovery file by subpoenaing the recordings from the Bureau of Prisons. (Doc. 136, at 6). It avers that it did not subpoena all of the recordings from January. (*Id.*). It further states that it produced in discovery copies of all recordings the Bureau of Prisons provided to it. (*Id.*). Finally, the government states that it provided defendant with copies of all communication between him and the undercover agent. (*Id.*, at 7).

In *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the Supreme Court held that the government has a duty to produce to an accused evidence favorable to the accused. To establish a violation of *Brady*, a defendant must show that the government suppressed exculpatory evidence that was material either to guilt or to punishment. *United States v. Ryan*, 153 F.3d 708, 711 (8th Cir. 1998). Evidence is material under *Brady* "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Kyles v. Whitley*, 514 U.S. 419, 433–34 (1995) (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985) (opinion of Blackmun, J.)) (internal quotation marks omitted). The critical question, however, is whether the defendant received a trial resulting in a verdict worthy of confidence. *Kyles*, 514 U.S. at 434. Failure to disclose such information could require a new trial if it seriously affected the defendant's rights. *Bagley*, 473 U.S. at 675-76.

The government does not suppress evidence in violation of *Brady* by failing to disclose evidence to which the defendant had access through other channels. *See United States v. Cheatham*, 899 F.2d 747,752-53 (8th Cir. 1990) (no *Brady* violation when defense counsel was aware of witness's existence and was not prevented from speaking with her). In other words, when a defendant is equally capable of obtaining the information himself, then there is no *Brady* violation. *See, e.g., United States v.*

*Albanese*, 195 F.3d 389, 393 (8th Cir. 1999) (finding no *Brady* violation where the government did not provide the defendant with a copy of a witnesses prior inconsistent testimony when the prior inconsistent testimony was publicly available); *United States v. Jones*, 160 F.3d 473, 479 (8th Cir. 1998) ("There is no *Brady* violation if the defendant[ ], using reasonable diligence, could have obtained the information [himself]." (citation and internal quotation omitted)); *United States v. Jones*, 34 F.3d 596, 600 (8th Cir. 1994) ("'[T]he Government cannot be held to have suppressed *Brady* material' when the defendant is in 'a position of parity with the government as far as access to this material.'" (quoting *United States v. Johnston*, 543 F.2d 55, 57 (8th Cir. 1976))).

Here, defendant could have subpoenaed the Bureau of Prisons, just like the government did, to obtain the recorded phone calls. Defense counsel did issue subpoenas to some entities, including a jail, in this case, showing that defendant was capable of doing so. (Docs. 55, 60, 63, 64). Therefore, because defendant could have obtained recorded phone calls from the Bureau of Prisons himself, he cannot show that the government suppressed evidence. *See, e.g.*, *United States v. Glass*, 635 F. App'x 20, 23 (3rd Cir. 2015) (finding no *Brady* violation when defendant could have obtained a deposition transcript from the Bureau of Prisons as easily as the government).

Even if the Court were to find that defendant did not have equal ability to subpoena the same phone records, defendant has still failed to establish that the allegedly missing phone calls were material to his guilt. "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Pennsylvania v. Ritchie*, 480 U.S. 39, 57 (1987) (citation and internal quotation marks omitted). A defendant cannot support a *Brady* claim by mere speculation or conclusory assertions. *United States v. Horton*, 756 F.3d 569, 575-76 (8th Cir. 2014) ("[M]ere speculation is not sufficient to sustain a *Brady* claim." (quoting *United States v. Aleman,* 548 F.3d 1158, 1164 (8th Cir. 2008) (internal

quotation marks omitted)); *United States v. Jumah*, 599 F.3d 799, 809 (7th Cir. 2010) ("[A] defendant cannot demand a new trial based on mere speculation or unsupported assertions that the government suppressed evidence." (citation and internal quotation marks omitted)). *United States v. Barrett*, 997 F. Supp. 312, 316 (N.D. N.Y. 1998) (denying motion for new trial based on alleged *Brady* violation when defendant's claim that the government withheld information was unsupported by anything other than defendant's unsupported speculation).

Here, defendant has proffered nothing but his own self-serving assertions that the phone calls were made, and that the recordings would contain exculpatory evidence. Defendant claims that the phone recordings would support his defense that he believed the undercover agent was connected to a Mexican cartel and that defendant believed he was working with the cartel to set up businesses in Iowa through which he would launder money. Defendant testified to this story at trial. The jury rejected it and the Court found it so contrary to the other overwhelming evidence to be patently false. Defendant is an unreliable source for the alleged content of these allegedly missing recorded phone calls. Thus, the Court finds that defendant has failed to make a credible showing that, even if they existed, recordings of the allegedly missing phone calls would contain material exculpatory evidence.

Finally, defendant claims the government also failed to disclose to him all of the email communications between him and the undercover agent. (Doc. 134, at 1). The government asserts that it turned over to defendant all communications between defendant and the undercover agent. (Doc. 136, at 7). Defendant has provided no basis for asserting that there were undisclosed emails, nor made any showing that these allegedly missing emails would contain material exculpatory evidence.

Accordingly, the Court finds there was no *Brady* violation and defendant is not entitled to a new trial.

### D. *Ineffective Assistance of Counsel Claim*

In defendant's second pro se motion for a new trial, he argues that he is entitled to a new trial because his trial attorney was ineffective. (Doc. 135). To establish a claim of ineffective assistance of counsel, the defendant must show that counsel's performance fell below an objective standard of reasonable competence, and that the deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. "Reasonable performance of counsel includes an adequate investigation of facts, consideration of viable theories, and development of evidence to support those theories." *Cagle v. Norris*, 474 F.3d 1090, 1097 (8th Cir. 2007) (citation and internal quotation marks omitted).

Normally, a collateral postconviction action under Title 28, United States Code, Section 2255 is the appropriate means for raising a claim of ineffective assistance of counsel and for developing a record sufficient to examine counsel's performance. *United States v. Parrott*, 906 F.3d 717, 719 (8th Cir. 2018). Indeed, the Supreme Court prefers that ineffective assistance claims be raised in the first instance on habeas motions. *See Massaro v. United States*, 538 U.S. 500, 505 (2003) (noting that Section 2255 is the preferable method for raising ineffective assistance claims because the court rules on a record developed specifically for litigating an ineffective assistance claim rather than a trial court record which is often incomplete or inadequate for that purpose). A district court, however, may consider an ineffective assistance of counsel claim on a motion for new trial if it has developed an adequate record on the issue. *United States v. Stevens*, 149 F.3d 747, 748 (8th Cir. 1998). The decision to grant or deny a motion for new trial based on a claim of ineffective assistance of counsel is within the sound discretion of the trial court. *United States v. Villaplando*, 259 F.3d 934, 938 (8th Cir. 2001).

Here, defendant makes a wide range of assertions against his trial attorney's ineffectiveness in the investigation of the case, decisions about calling witnesses, and the arguments made by counsel. (Doc. 135). The Court observed trial counsel's performance and found no basis from its own observations to conclude that counsel was ineffective. Indeed, the Court found it clear from counsel's performance that he was thoroughly prepared, conducted effective cross examination, and made compelling arguments based on the evidence. No evidence arose during the course of the trial to establish a record from which the Court could now evaluate the merits of defendant's ineffective assistance of counsel claim. Accordingly, the Court denies defendant's motion for a new trial on this ground. Defendant is free to pursue his ineffective assistance of counsel claim in habeas litigation.

### III. CONCLUSION

For the reasons stated, the Court **denies** defendant's Motions for a New Trial (Docs. 133, 134, and 135).

**IT IS SO ORDERED** this 22nd day of July, 2019.

_____
C.J. Williams
United States District Judge
Northern District of Iowa